IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-40005-JAR |
| | ) | |
| ROBERT BENJAMIN EWING, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Robert Benjamin Ewing's Motion to Suppress Evidence (Doc. 19). The parties have fully briefed the motion and the Court held an evidentiary hearing on July 17, 2013. The Court has thoroughly considered the parties' briefs and the evidence presented at the hearing, and is now prepared to rule. For the reasons stated below, Defendant's motion is denied.

**I.  Factual Background**

On the morning of September 24, 2012, Topeka Police Officer Aaron Jones and Sergeant Andrew Beightel were investigating a homicide that occurred overnight at the Topeka Cemetery in Topeka, Kansas. As part of the investigation, Officer Jones and Sgt. Beightel were canvassing the neighborhood around where the body was found, conducting "knock-and-talks," where an officer goes from house to house, asking individuals if they know the victim or witnessed anything in relation to the investigation. Officer Jones and Sgt. Beightel were riding in a marked police car which Officer Jones was driving. While canvassing, Officer Jones and Sgt. Beightel noticed a black Chevrolet Impala pass by. Officer Jones observed that the driver was a white male with curly hair, talking on a cell phone and looking around as he passed. Less than one

hour later, Officer Jones noticed the Impala pass by again while he sat in his police vehicle, waiting on Sgt. Beightel to conduct a knock-and-talk. Officer Jones testified that the same driver looked at him and gave him an "odd, wide-eyed look."

When Sgt. Beightel returned to the patrol car, the officers discussed the Impala and agreed it looked suspicious; Officer Jones decided to run the tag through the National Crime Information Center ("NCIC") . While they waited for the tag check, Officer Jones and Sgt. Beightel followed the Impala. The NCIC search returned a result of "no record," which Officer Jones testified usually meant that the tag was expired. Officer Jones activated the emergency lights of his vehicle and pulled the Impala over to the right side of the street based on the tag violation.

Officer Jones approached the driver's side of the Impala and Sgt. Beightel approached the passenger's side for safety purposes. Officer Jones and Sgt. Beightel identified the driver as Defendant Robert Ewing. Defendant had no identification and was the only person in the vehicle. Officer Jones told Defendant why he stopped him, and noticed that Defendant had his body turned completely to the left with one arm out the window and an elbow on the steering wheel. Officer Jones believed this posture was intended to shield his view into the vehicle. Sgt. Beightel noticed a clear open bottle containing a beverage sitting in a cup holder. Based on his training and experience, he believed the "long-necked, glass bottle" was an alcoholic beverage. Sgt. Beightel gestured to Officer Jones over the top of the car to remove Defendant from the vehicle. Officer Jones asked Defendant to get out of the vehicle and had him walk towards the rear of the Impala, in front of the patrol car, and stand near the passenger side of the trunk.

After removing Defendant from the vehicle, Sgt. Beightel told Officer Jones about the

open container he saw inside the vehicle. Sgt. Beightel remained near Defendant at the rear of the Impala while Officer Jones searched the passenger area. Officer Jones testified that he was searching for other open containers or evidence that would indicate Defendant was driving under the influence ("DUI"), because in his experience, DUI's are typical when open containers are found.

The open container was located next to the center console of the vehicle. Officer Jones opened the center console where he found a digital scale with white residue on it. He stated he opened the center console because there might have been another open container within the console as it was within Defendant's reach when he was in the vehicle. Based upon his training and experience, Officer Jones believed that the scale was used in narcotic transactions and that the white residue was cocaine. Officer Jones continued to search the vehicle, where he found another digital scale in the glove box.

After searching the passenger area, Officer Jones walked to the rear of the vehicle and opened the trunk. Officer Jones testified that he was looking for evidence relating to the open container, to a DUI infraction, or to drug-related activity. Inside the trunk, Officer Jones noticed the wooden stock of a rifle sticking out of the end of a blanket. Officer Jones confirmed it was a rifle by flipping over the blanket. Officer Jones notified Sgt. Beightel, who secured the Defendant in handcuffs for safety purposes. The rifle was a .22 caliber rifle with an extended magazine and a sawed-off barrel. Once Defendant was secured, Sgt. Beightel determined the rifle was loaded with a round in the chamber and several rounds in the magazine.

Officer Jones read Defendant his *Miranda* rights and Defendant waived his rights and agreed to speak to the officers. Defendant told the officers that he previously saw the gun in the

Impala but did not know it was currently there and denied that the gun was his. Defendant stated he had borrowed the car from "Brandon." An insurance card issued to "Brandon Peyton" was later found in the car. Defendant agreed to give a DNA sample; he told Officer Jones that his DNA would be found on the rifle but only because he had handled the rifle a couple of weeks before. Officers also checked the Impala's Vehicle Identification Number ("VIN"), which did not return a record.

## II.     Discussion

Defendant moves to suppress evidence of the firearm, arguing that Officer Jones lacked probable cause to search the Impala's trunk. Defendant contends that the search was not permissible incident to a traffic citation, and that a search incident to arrest was not permissible because he was removed from the immediate vicinity of the vehicle after the open container was discovered. Defendant points to the Kansas Open Container statute. While that law prohibits open containers in vehicles, it provides an exception to open containers in the locked trunk of a vehicle.[1]

The Government responds that Defendant lacks standing to contest the search of the vehicle. Moreover, the search of the passenger area was justified under either the vehicle exception, or as a search incident to arrest, which led to the discovery of the scales that formed the basis of probable cause to search the trunk under the vehicle exception. Finally, the Government maintains that the rifle would have been inevitably discovered during an inventory search since Defendant had no ownership interest in the vehicle, and the tags and VIN had returned with no record.

---

[1] K.S.A. § 8-1599.

## A. *Standing*

Fourth Amendment rights are personal and cannot be claimed vicariously.[2] "It is immaterial if evidence sought to be introduced against a defendant was obtained in violation of someone else's Fourth Amendment rights."[3] Standing therefore "turns on the classic Fourth Amendment test: whether society is prepared to recognize [a particular] expectation as objectively reasonable."[4]

To establish standing to challenge a vehicle search, Defendant bears the burden of showing that he had a "legitimate possessory interest in or lawful control over the car."[5] In resolving standing issues of this type, the Court considers important, but not determinative, the following factors: "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle."[6] In the case of borrowed vehicles, a defendant must establish a link between himself and the registered owner.[7] Such a link does not need to include "legal documentation showing a chain of lawful custody from the registered owner to [Defendant]."[8] If a defendant claims at the suppression hearing that he lawfully

---

[2] *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).

[3] *United States v. Rascon*, 922 F.2d 584, 586 (10th Cir. 1990).

[4] *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000).

[5] *United States v. Valdez Hocker*, 333 F.3d 1206, 1208 (10th Cir. 2003).

[6] *Id.* (citing *Allen*, 235 F.3d at 489).

[7] *United States v. Eckhart*, 569 F.3d 1263, 1275 (10th Cir. 2009).

[8] *Valdez Hocker*, 333 F.3d at 1208.

borrowed the car from the registered owner or someone with the apparent authority to give possession, such a statement is sufficient to show standing.[9] However, mere possession of the car and its keys does not suffice to establish a legitimate possessory interest.[10]

Defendant has not shown he had any legitimate possessory interest in the vehicle. The vehicle was not registered and the only evidence about the true owner of the Impala is the insurance card for Brandon Peyton that was later found in the vehicle. But Defendant did not testify that he obtained the vehicle from Brandon Peyton or someone with actual or apparent authority to give him possession, in fact, he did not refer to "Brandon's" last name. The mere fact that Defendant was driving the vehicle is insufficient.[11] Finally, the fact that Defendant did not claim ownership of the rifle weighs against a finding of standing.[12] Due to the unregistered tag and VIN, and the lack of evidence or testimony presented by Defendant, the Court cannot find that Defendant had lawful control or a legitimate possessory interest in the vehicle at the time of the search. Therefore, Defendant does not have standing to contest the search of the vehicle.

### B. *The Search of the Trunk was Nevertheless Valid*

Assuming, *arguendo*, that Defendant had a legitimate possessory interest in the vehicle, the search of the trunk would fall within well-defined exceptions to the warrant requirement of the Fourth Amendment. A traffic stop is a seizure within the meaning of the Fourth

---

[9]*United States v. Beltran-Palafox*, 731 F. Supp. 2d 1126, 1164 (D. Kan. 2010).

[10]*Allen*, 235 F.3d at 489.

[11]*See id.*

[12]*See Beltran-Palafox*, 731 F. Supp. 2d at 1165.

Amendment.[13] The principles of *Terry v. Ohio*[14] apply to such traffic stops.[15] Thus, the reasonableness of a stop depends on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."[16] Defendant does not challenge the basis for the initial stop. Instead, he argues that the subsequent search of the trunk was impermissible under the Fourth Amendment.

1. **Passenger Area**

Officer Jones' search of the passenger area of the vehicle was valid under either the search-incident-to-arrest exception, or the vehicle exception to the warrant requirement. The search-incident-to arrest exception to the warrant requirement is intended to "ensure officer safety and prevent the concealment or destruction of evidence."[17] It may "only include 'the arrestee's person and the area within his immediate control . . . mean[ing] the area from within which he might gain possession of a weapon or destructible evidence.'"[18] Since the Supreme Court decided *Arizona v. Gant*, "the scope of a search [incident to arrest] must be strictly tied to and justified by the circumstances which rendered its initiation permissible."[19] Thus, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching

---

[13] *United States v. De La Cruz*, 703 F.3d 1193, 1196 (10th Cir. 2013).

[14] 392 U.S. 1 (1968).

[15] *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).

[16] *Terry*, 392 at 19–20.

[17] *Hunnicutt*, 135 F.3d at 1350.

[18] *Arizona v. Gant*, 556 U.S. 332, 337 (2009) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

[19] *United States v. Edwards*, 632 F.3d 633, 643 (10th Cir. 2001) (quoting *Chimel*, 395 U.S. at 762).

7

distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."[20] "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence."[21] "[A] search incident to arrest can also precede the arrest if probable cause for the arrest preceded the search (rather than being justified by the fruits of the search)."[22]

As an initial matter, Officer Jones and Sgt. Beightel had probable cause to arrest Defendant prior to the search. "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."[23] Sgt. Beightel testified that he observed an open, clear bottle in the passenger area of the vehicle that he believed, based on his training and experience, contained alcohol. Defendant was therefore subject to arrest for violating the Kansas open container law, K.S.A. § 8-1599(b)(1).

Because Defendant was removed from the vehicle prior to the search, he was not within reaching distance of anything within the vehicle. However, the search of the passenger area of the vehicle may be justified by the officer's "reasonable [belief that] the vehicle contains evidence of the offense of arrest."[24] Officer Jones testified that based upon his training and

---

[20]*Gant*, 556 U.S. at 349.

[21]*Id*. at 343–44.

[22]*United States v. Sanchez*, 555 F.3d 910, 920 (10th Cir. 2009) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)).

[23]*Demster v. City of Lenexa, Kan.*, 352 F. Supp. 2d 1165, 1171 (D. Kan. 2005) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002)).

[24]*Gant*, 556 U.S. at 349.

8

experience, when officers find an open container in a vehicle, there are typically other open containers or evidence that the individual is driving under the influence. The Court finds that Officer Jones had a reasonable belief that further evidence of open containers or a DUI infraction would be found in the Impala.[25] Therefore, the passenger search of the vehicle fell within the search incident to arrest warrant exception.

The search was also justified under the vehicle exception to the warrant requirement. Under this exception, if the officers have "probable cause to believe there is contraband inside an automobile that has been stopped on the road [they] may search it without obtaining a warrant."[26] Sgt. Beightel observed what he reasonably believed was an open container of alcohol in the Impala and told Officer Jones. The container, which was in plain view, provided Officer Jones with probable cause to believe he may find other open containers, or evidence that a DUI infraction had occurred.

### 2. Trunk

Officer Jones discovered two digital scales, one with white residue on it, while searching the passenger area of the vehicle. This created independent probable cause to search the entire vehicle under the vehicle exception to the warrant requirement. Under the vehicle exception police "are empowered to search the entire vehicle, including the trunk and all containers therein that might contain contraband."[27] Probable cause to search a veh icle is established if, "under the 'totality of the circumstances[,] there is a fair probability that the car contains contraband or

---

[25]*See United States v. Pullen*, 884 F. Supp. 410, 413 (D. Kan. 1995).

[26]*United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002).

[27]*United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009) (quoting *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008).

9

evidence.'"[28]

During the search of the passenger area of the vehicle, Officer Jones found a digital scale with white residue inside the center console just behind where the open container was located. Based upon his training and experience, Officer Jones believed the white residue on the first scale was cocaine residue, evidence of illegal narcotics activity. Such a belief was further reinforced by the discovery of the second digital scale. Even though the second digital scale did not have residue, scales are "commonly regarded as tools of the drug trade."[29] The Court finds that Officer Jones had probable cause to search the trunk for narcotics or further evidence of drug activity under the vehicle exception.

### 3. Inevitable Discovery

Even if the search of the trunk was not justified under an exception to the warrant requirement, discovery of the rifle was inevitable because the Impala would have been impounded and subjected to an inventory search. The inevitable discovery doctrine "provides an exception to the exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it."[30] The government bears the burden of showing "by a preponderance of the evidence that the evidence at issue would have been discovered without the Fourth Amendment violation."[31] If evidence is seized unlawfully during a roadside search, the evidence would be admissible if it "would have been inevitably discovered

---

[28] *United States v. Edwards*, 632 F.3d 633, 645 (10th Cir. 2001) (citing *United States v. Nielsen*, 9 F.3d 1487, 1489–90 (10th Cir. 1993)).

[29] *See United States v. Winder*, 557 F.3d 1129, 1138 (10th Cir. 2009) (collecting cases).

[30] *Beltran-Palafox*, 731 F. Supp. 2d at 1161 (citing *United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009)).

[31] *Id.* (citing *United States v. Martinez*, 512 F.3d 1268, 1273 (10th Cir. 2008)).

in a subsequent inventory search."[32] Generally, in arguing "inevitable discovery," the government may rely on a hypothetical inventory search.[33]

Under Kansas law, "in order to conduct a valid inventory search, the police must have first taken lawful custody of the vehicle. The police may take lawful custody of the vehicle when they have express authority to impound the vehicle or when then there are reasonable grounds for impoundment."[34] An inventory search can then be "undertaken in good faith pursuant to standard police procedures" but must not be simply a ruse to search for incriminating evidence.[35]

Officer Jones and Sgt. Beightel had reasonable grounds to take lawful custody of the Impala. As noted before, Defendant was subject to arrest under K.S.A. § 8-1559.[36] Sgt. Beightel testified that because Defendant was the sole occupant of the vehicle, the Impala would have been impounded. Officer Beightel's testimony is supported by Kansas law—generally, if the owner, operator, or person in charge of the vehicle is available to determine the disposition of the vehicle, officers may not impound the vehicle.[37] If the officers are unable to determine whether an individual has the authority to make such a decision, however, impounding a vehicle for

---

[32]*Id.*

[33]*Id.*

[34]*Kansas v. Vandevelde*, 138 P.3d 771, 783 (Kan. Ct. App. 2006).

[35]*United States v. Hannum*, 55 F. App'x. 872, 875 (10th Cir. 2003).

[36]*See Kansas v. Cox*, 206 P.3d 54, 56 (Kan. Ct. App. 2009).

[37]*Hannum*, 55 F. App'x. at 874–75 (citing *Kansas v. Teeter*, 819 P.2d 651, 653 (Kan. 1991)).

11

"proof of ownership" is a reasonable ground for impoundment.[38] Conducting an inventory search "of a car before impounding it is a standard procedure that protects the police from claims concerning the car's contents. There is nothing improper in this procedure, especially when none of the persons detained can show ownership of the vehicle."[39]

Furthermore, because the vehicle was not properly registered under Kansas law, the vehicle could not be lawfully driven on state roads, also a reasonable ground for impoundment.[40] Therefore, the Government has shown by a preponderance of the evidence that the rifle would have been inevitably discovered during an inventory search.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Suppress Evidence (Doc. 19) is **denied.**

**IT IS SO ORDERED.**

Dated: August 13, 2013

                                            S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            UNITED STATES DISTRICT JUDGE

---

[38] *See United States v. Nanez-Lopez*, No. 07-20039-JWL, 2007 WL 2265432, at *4-5 (D. Kan. Aug. 6, 2007).

[39] *United States v. Long*, 705 F.2d 1259, 1262 (10th Cir. 1983).

[40] *Hannum*, 55 F. App'x. at 875–76 (citing *Teeter*, 819 P.2d at 653).